**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 25-CR-10107-IT |
| | ) | |
| ALVIN JOAQUIN | ) | |

**DEFENDANT'S MOTION FOR PRETRIAL RELEASE ON CONDITIONS**

Alvin Joaquin respectfully requests that this Court release him on conditions of release pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Joaquin has rebutted the presumption of detention triggered by the fact that he is charged with a drug offense, with evidence that he has strong family support, has significant ties to the community, is the primary caregiver for three minor children, and has only a minor recent criminal history, none of which suggests he poses a danger to the community. As such, Mr. Joaquin asks that he be released pending trial on the conditions proposed below.

I.      *Legal Framework*

As the Supreme Court held in *Salerno*, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added).

Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v.*

1

*Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). One charged with a crime is, after all, presumed innocent. *See generally Stack v. Boyle*, 342 U.S. 1, 4 (1951). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales-Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), cert. dismissed sub nom., *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

In this case, a rebuttable presumption of detention arises under 18 U.S.C. §3142(e)(3)(A). However, the Court may still release Mr. Joaquin "as long as the defendant has presented **some** evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (emphasis added). That "general problem" in drug cases was "the problem of drug offenders and flight," a problem that Congress identified because "drug traffickers often have established ties outside the United States … [and] have both the resources and foreign contacts to escape to other counties." *Id.* (quoting S.Rep., *supra,* at 20, 1984 U.S.Code Cong. & Admin.News, p. 23). This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707. Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Id*. (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707. As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of

flight risk and dangerousness is definitively rebutted. *Id.* ("Once this burden of production is met, the presumption is 'rebutted.'") (quoting *Jessup*, 757 F.2d at 384); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home). The government bears the burden of *persuasion* at all times. *Id.*; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

II.      *Argument for Release*

While Congress may have enacted a presumption of detention in drug cases because of the problems identified above, Mr. Joaquin is simply not in that category of alleged drug offenders. There is nothing in the facts of this case that suggests he ties outside of this country by virtue of any alleged drug trafficking, or that he has the financial means to flee because of accumulated wealth from drug trafficking. The co-defendant in the case was the target of the investigation, allegedly participating in several controlled buys with a cooperating witness before the date of arrest. Mr. Joaquin had never arisen in the investigation until the date of arrest, when he accompanied the co-defendant to deliver a large quantity of methamphetamine to an

undercover agent. There is nothing to suggest he has ties to international drug trafficking organizations or that he was even regularly engaged in drug trafficking at all.

Beyond that, there is more than some evidence that Mr. Joaquin will not flee or endanger the community if released. The presumption is easily rebutted by information Mr. Joaquin provided to PreTrial Services. He was born and raised in the Lawrence area, save for two years he was sent to the Dominican Republic to attend school as a teenager. Both his parents and both his siblings live in and around Lawrence. He was married to a woman who tragically passed away about two years ago. He now has sole custody of her two teenage daughters and their young son. He has a lengthy employment history in the Lawrence area.

Because there is ample evidence to rebut the presumption of detention in this case, the burden shifts back to the government to prove by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community, or to prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Joaquin's appearance in court. The government cannot meet that burden here.

There are conditions of release that can be fashioned to mitigate any risk of danger or non-appearance Mr. Joaquin might pose. Specifically, he proposes his release subject to the following conditions, in addition to any other standard conditions the Court feels are appropriate:

1. Regular reporting to and supervision by a federal probation officer;

2. Surrender his (expired) passport and do not obtain any new travel documents;

3. Travel restricted to the District of Massachusetts;

4. Regular drug testing;

5. Reside with his mother and children at their current address, and do not move without prior permission of probation;

6. Obtain full-time employment;

7. Attend intake appointment with STAR on April 10, 2025, and engage in services offered through STAR, including but not limited to GED classes.[1]

In addition, Mr. Joaquin's mother, who will be present in Court for the detention hearing scheduled for April 9th, has agreed to serve as Mr. Joaquin's third party custodian.

These conditions will provide Mr. Joaquin the stability and direction in his life to ensure that he appear in court and not pose any danger to the community. While detained pretrial on related state charges, Mr. Joaquin already began taking GED prep classes through the STAR program. He is eager to continue and realizes that obtaining his GED will lead to more lucrative employment. In the meantime, he plans to seek full-time employment, either through his former employer installing carpet, or through his brother's company where he could work as a "picker." Mr. Joaquin has experienced two unfathomable tragedies in this life: loss of his young son and loss of his wife. In the past, he has turned to drugs to cope. He will be drug tested by probation to ensure he is not using drugs to cope. And if the STAR program feels that mental health treatment is necessary, they can provide that treatment for him.[2] He will reside with his mother in a house she owns, along with his children. His mother will ensure that he is complying with all court-ordered conditions of release. His brother, who lives nearby with his own wife and children, has also agree to support and guide Mr. Joaquin if he is released.[3]

---

[1] A letter confirming Mr. Joaquin's intake appointment with STAR is attached as Exhibit A. More information about the STAR program can be found at https://www.essexsheriffma.org/sheriffs-biography/pages/supporting-transitions-and-reentry-star-program.

[2] Based on counsel's conversation with a staff member from the STAR program, Mr. Joaquin will participate in an assessment at his intake appointment. That assessment will determine his level of risk, which will dictate the level of services the program will provide. Whatever services the STAR program feels are appropriate, they will arrange for Mr. Joaquin. To the extent those recommendations overlap with mandated conditions of his federal pretrial release, e.g., drug testing, the STAR program will coordinate with federal probation.

[3] A letter from Mr. Joaquin's brother is attached as Exhibit B.

For these reasons, and any additional reasons that may be presented at the detention hearing, Mr. Joaquin respectfully requests that this Court find that the presumption of detention has been rebutted and release him with conditions.

ALVIN JOAQUIN,
By his attorney,

*/s/ Jane F. Peachy*
Jane F. Peachy, BBO #661394
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 8, 2025.

*/s/ Jane F. Peachy*
Jane F. Peachy

6